**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No. 25-22211 (JNP) |
| LILLIE MARIE COLEY, | Chapter 7 |
| Debtor. | Judge: Jerrold N. Poslusny, Jr. |

**OPINION DENYING DEBTOR'S MOTION TO CONVERT**
**CASE FROM CHAPTER 7 TO CHAPTER 13**

Lillie Marie Coley (the "Debtor") filed a motion (the "Motion") seeking conversion of her Chapter 7 case to Chapter 13. Sean Carter opposes the Motion arguing the Debtor filed her case in bad faith, and therefore, conversion is not appropriate. For the reasons discussed below the Motion will be denied.

**Background**

A. The Debtor's Schedules and Statement of Financial Affairs

On November 17, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Petition") under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Dkt. No. 1. The Petition included her initial Schedules and Statement of Financial Affairs ("SOFAs").[1] Schedule A/B lists ownership of a property located in Egg Harbor Township, New Jersey (the "Egg Harbor Property"), but states that the value of the portion she owns is only $100. Id. Schedule E/F did not disclose any unsecured creditors. Id. The Debtor checked a box in Schedule G stating that she was not a party to any contracts of sale or leases. Id. In Schedule I, the

---

[1] The form Schedules and SOFAs and all form amendments include a statement that the document is filed under penalty of perjury. The Debtor did not sign the certification on the original Petition, Schedules, and SOFAs, but did sign a Declaration Regarding Electronic Filing, Dkt. No. 2, which includes a certification under penalty of perjury that the information in the Petition, Schedules, and SOFAs is true and correct to the best of her knowledge. Each of her amendments did include a certification of filing under penalty of perjury.

1

Debtor states that she is not employed and has $5,000 of "partial retirement" income per month. Id. The SOFAs state that she had no income from employment in the years 2023-2025, and her income from sources other than employment was $0 in 2023 and $3,000 in 2024. Id.

On November 21, the Debtor filed an amendment to schedules D, E, and F, (the "First Amended Schedules") listing four unsecured creditors and two secured creditors, including one holding a second mortgage (despite not disclosing a creditor holding a first position mortgage). None of this was disclosed in the initial Schedules. See Dkt. No. 11.

Then on November 25, 2025, the Debtor filed a motion to seal further amended schedules and SOFAs (the "Second Amended Schedules" and "Second Amended SOFAs"). She filed those documents under seal pending a determination of a motion to seal the documents.[2] She subsequently withdrew the motion to seal and the Second Amended Schedules and Second Amended SOFAs were unsealed and are available on the public docket. See Unsealed document linked to Dkt. No. 18. The Second Amended Schedules include several new disclosures, including the following. Schedule A/B states that the owner of the Egg Harbor Property is Lillie's Property Trust (the "Trust") and that the Debtor has a beneficial interest in the Trust. Nevertheless, she states that she has a 100% interest in the Egg Harbor Property and its value is $350,000, she discloses the second mortgage against the Egg Harbor Property is $42,000 (but she does not disclose a first position mortgage) as well as that there is an unexpired lease related to the Egg Harbor Property and the $1,500 rental income, but did not amend her Schedule I to include this income. For the first time, the Debtor disclosed that she owns a timeshare in Buena Vista, Florida (the "Timeshare"), with a value of $18,000. The Debtor further disclosed ownership of a Nissan Sentra. She disclosed having a bank account and 100% ownership of three businesses.

---

[2] The Debtor did not use the Official Forms when she filed these amendments.

2

The Second Amended SOFAs similarly disclose many "new" facts. The Debtor amended her yearly income from employment to be approximately $60,000 for 2023-2025, but stated that her other income from those years was $0. She also disclosed that she made transfers to family members and gifts exceeding $600 over the past two years, but did not disclose the amounts or the recipients (as required in the form SOFAs). She stated that she had losses (fire, theft, casualty, etc.), but did not disclose the property lost, circumstances, insurance, date of the loss, or the value of the property lost (as required in the form SOFAs).

Then on November 26, 2025, the Debtor filed yet another round of amended Schedules (the "Third Amended Schedules"). Dkt. No. 20. She asserted ownership of the Egg Harbor Property (as opposed to the Trust) and disclosed that it is an investment property. Id. She publicly disclosed the Timeshare and Nissan Sentra. But she did not disclose ownership of the three businesses. Id. She also amended Schedule J to reduce her monthly expenses to $5,700 (from almost $14,000). Id. In one of her replies to the Motion, the Debtor states that there is a sale contract with the tenant at the Egg Harbor Property. Dkt. No. 60. This alleged contract is not disclosed in any of her Schedules or SOFAs.

B. The Adversary Proceeding

Shortly after the Petition Date, the Debtor filed an adversary complaint against several lawyers, their law firms, and a title company seeking to relitigate numerous determinations by non-bankruptcy courts that resulted in "lien(s), sanctions orders, or judgment entries" against the Debtor. Adv. No. 25-2500. Several defendants filed motions to dismiss arguing, among other things, that the Debtor lacked standing to bring the Complaint. Adv. Pro. Dkt. Nos. 7, 9, 25. In response, the Debtor filed the Motion. Dkt. No. 36. The Debtor argues that under section 706(a), she has a "one-time absolute right" to convert her Chapter 7 case to Chapter 13. Dkt. No. 36.

3

### C. The Motion

Carter argues that the case was filed in bad faith, and therefore, cannot be converted pursuant to section 706(d) of the Bankruptcy Code and Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007). Dkt. No. 58.[3]

The Debtor filed several pleadings in response to Carter's objection. The first argues that Carter lacks standing to object because he is not a creditor and that his objection was untimely. Dkt No. 59. The Debtor's other responses make several additional arguments, including that: (1) Carter does not a claim because she appealed his judgment against her; (2) Carter's claim is not a priority claim and should be characterized as unsecured, disputed, and contingent because of her appeal; (3) this Court should consolidate and re-adjudicate the state court determinations including liens against her properties; (4) Carter's allegation of bad faith is an insufficient basis to deny conversion; (5) she will (and under the Bankruptcy Rules is permitted to) amend her Schedules and SOFAs to accurately disclose her financial circumstances; (6) she is not seeking conversion to "resolve" the validity of liens stemming from state court determinations; (7) she is not required to "seek discharge of consumer debts" to get relief in bankruptcy court and can "[invoke] bankruptcy jurisdiction to address disputed property interests, allegations, or creditor assertions affecting estate property;" (8) her intent to relitigate past cases suggests good faith; and (9) conversion is warranted under Marrama. Dkt. Nos. 59, 60, 69.

One of the Debtor's responsive pleadings argues that requiring her case to remain in Chapter 7 would be detrimental to closing on the purported sale of the Egg Harbor Property. Dkt. No. 60. Rymir Satterthwaite filed two declarations in support of the Motion (the second amends

---

[3] The Chapter 7 Trustee (the "Trustee") filed a limited objection, arguing that the Court should deny the Motion because he expended considerable effort administering the case, and the Debtor has not provided for payment of Chapter 7 administrative expenses. Dkt. No. 45. The Debtor responded that she has no objection to paying the Trustee's fees and expenses through a Chapter 13 plan. Dkt. No. 54.

4

the first). Dkt. Nos. 61, 64. Satterthwaite states he is the Debtor's godson, and she is his legal guardian. Dkt. No. 64. He argues that conversion to Chapter 13 would allow previous state court cases involving the Debtor to be addressed by this Court. Id.

For the reasons discussed below, Carter has standing and timely filed his objection, the Debtor's own allegations and arguments do not support that she filed her case in good faith, but instead, show that the case is atypical and was not filed in good faith. Therefore, conversion is not appropriate, and the Motion will be denied.

### Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1334, 157(a), (b) as well as the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended. Venue is proper in this Court under 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).

### Discussion

#### A. Standing

"Generally, to have standing in a bankruptcy case, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings." In re Eagle-Picher Indus., Inc., 669 B.R. 590, 602 (Bankr. S.D. Ohio 2025). Under section 101(10)(A) of the Bankruptcy Code, a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). The definition of an entity under section 101(15) includes a "person." See id. § 101(15). Finally, section 101(5)(A) defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Id. § 101(5)(A).

5

Here, because Carter is a person, he is an entity. Moreover, he has a claim because he holds a judgment for sanctions of approximately $119,000 against the Debtor for attorney's fees and costs arising from a case filed by the Debtor. Coley v. Carter, 2:25-cv-04216 (C.D. Cal. Jan. 13, 2026). While the Debtor's pending appeal may result in the claim being disputed, it does not alter the fact that Carter holds a claim. Consequently, Carter is a creditor. Moreover, because his claim and distributions on account of his claim could be affected by issues in this case and in particular, the outcome of this Motion, Carter has a pecuniary interest in the case and he has standing.

### B. Carter's Objection Was Timely Filed

The Notice of the Motion states that objections must be filed "no later than 7 days prior to the hearing date." Dkt. No. 36. See also D.N.J. LBR 9013-2(a)(2). The hearing was originally scheduled for January 13, 2026. Dkt. No. 36. Carter filed his objection on January 6 therefore, the objection was timely filed.

### C. Conversion to Chapter 13

Under section 706(a) of the Bankruptcy Code, a debtor may convert a case under Chapter 7 to Chapter 13 at any time if the case has not already been converted. 11 U.S.C. § 706(a). However, section 706(d) prohibits a Chapter 7 case from being converted to a case under Chapter 13 "unless the debtor may be a debtor" under Chapter 13. See id. § 706(d).

Here, the Debtor argues that she has an absolute right to convert her case to a Chapter 13. Dkt. No. 36. However, in Marrama, the Supreme Court ruled that a debtor's "right" to convert a Chapter 7 case to Chapter 13 under section 706(a) is limited by section 706(d), which requires that "the debtor may be a debtor under such chapter." 549 U.S. at 371. In addition to other eligibility requirements, the Supreme Court held that the class of eligible Chapter 13 debtors does not include an "atypical" debtor whose bad faith demonstrates that he is not entitled to relief afforded to a good faith debtor. In re Norwood, 2013 WL 4099834, at *7 (Bankr. D. Colo. Aug. 8, 2013) (citing

6

Marrama 549 U.S. at 374-75). In Marrama, the Supreme Court did not define "with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to . . . deny conversion from Chapter 7," but "emphasize[d] that the debtor's conduct must, in fact, be atypical." In re Shafer, 2009 WL 1651294, at *6 (Bankr. D.N.J. June 10, 2009) (quoting Marrama, 549 U.S. at 375 n.11). "Ultimately, under Marrama, bankruptcy courts have broad discretion in determining whether a debtor has acted in bad faith and that the presence of bad faith is sufficient ground to deny a debtor's motion to convert his or her case under section 706." Id. (quoting In re Piccoli, 2007 WL 2822001, at *5 (E.D. Pa. Sept. 27, 2007) (citing In re Truong, 2007 WL 708874, at *3-4 (Bankr. D.N.J. March 5, 2007))).

Therefore, the Court must determine whether the Debtor has acted in good faith, or whether the Debtor's "atypical" conduct demonstrates that she is not entitled to relief afforded to a good faith debtor. See Norwood, 2013 WL 4099834, at *7.

### i.  *Atypical*

The Court first considers whether the Debtor's conduct is atypical. Courts have concluded that a debtor's failure to disclose assets is sufficient to find that the case is atypical. For example, in Marrama, the Chapter 7 debtor disclosed an interest in a property but listed the value of his interest to be zero and that he had not recently transferred it outside the ordinary course. See Marrama, 549 U.S. at 368. Both of those representations were false, and the Supreme Court concluded this lack of disclosure was sufficient to deny a motion to convert to Chapter 13. In Shafer, the debtor did not list his ownership of real property in his Schedules or his transfer of properties in his SOFAs. The debtor sought to convert to Chapter 13 after the trustee undertook efforts to recover assets. Shafer, 2009 WL 1651294, at *7. The court ruled that Shafer's actions were more egregious than those in Marrama and denied conversion. See id. at *8.

The Debtor's conduct in this case is similar to both <u>Marrama</u> and <u>Shafer</u>. The Debtor's conduct related to haphazard disclosure of assets is equally egregious and, therefore, is atypical. As discussed above, the Debtor has failed to fully disclose information including assets or has repeatedly amended her Schedules and SOFAs to piecemeal provide disclosure. Most concerning is the continuing evolution of the status of the Egg Harbor Property; ownership of a second vehicle and three businesses; and gifts and losses (neither of which included all of the disclosures required in the SOFAs). <u>See</u> Dkt. Nos. 1, 11, 18, 20. For this reason alone, the Court concludes the Debtor's conduct is atypical.

But the Debtor's statements and conduct provide an additional basis to conclude that this case is atypical. The Debtor has repeatedly stated that: (a) she is not seeking a discharge, <u>see, e.g.</u>, Dkt. Nos. 11, 19, 20, 29, 36, and the Unsealed Schedules, and (b) the purpose of her case is for this Court to address issues related to several other pieces of litigation that have been adjudicated. <u>See, e.g.</u>, Dkt. Nos. 11, 20, 36, and the Unsealed Schedules. First, "[t]he overriding purpose of the Bankruptcy Code" is to provide debtors with a fresh start through discharge of debts. <u>In re Cohn</u>, 54 F.3d 1108, 1113 (3d Cir. 1995); <u>see also</u> <u>In re Anderson</u>, 884 F.3d 382, 390 (2d Cir. 2018) ("[T]here is no matter more central to the purposes and policies of the Bankruptcy Code than the fresh start provided by discharge." (quotation omitted)). Indeed, the overwhelming number of consumer bankruptcy cases are filed for the purpose of obtaining a discharge. As such, the Debtor specifically stating that she is not seeking a discharge makes this case atypical. Moreover, bankruptcy is not the proper venue for seeking what amount s to appellate review of judicial decisions by other courts. For this additional reason, this case is atypical.

Based on the Debtor's the many irregularities between her original and amended Schedules and SOFAs and her repeated assertions that she is not seeking a discharge and only filed bankruptcy to have this court review previous orders of other courts, the Court concludes that the

8

case is atypical, of the type discussed in Marrama, and that is a more than sufficient basis to deny conversion. See 549 U.S. at 374-75. Therefore, the Motion will be denied.

*ii. Totality of Circumstances and Bad Faith*

Despite determining dismissal is appropriate because this case is atypical, the Court considers the totality of circumstances to determine whether the Debtor's conduct also demonstrates bad faith. The Court in Marrama did not "articulate with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to . . . deny conversion from Chapter 7." Marrama, 549 U.S. at 375 n.11. Courts in this circuit have determined that the same good faith analysis performed when evaluating the filing of a Chapter 13 petition should be performed when evaluating a motion to convert from Chapter 7 to Chapter 13. See Piccoli, 2007 WL 2822001, at *6 (citing Marrama, 549 U.S. at 367); Shafer, 2009 WL 1651294, at *7. Therefore, courts in the Third Circuit generally follow the decision in In re Lilley, 91 F.3d 491 (3d Cir. 1996), to make the good faith determination. The court in Lilley determined that a debtor's good faith must be assessed on a case-by-case basis under the totality of the circumstances, and listed five non-exhaustive factors for courts to consider:

> the nature of the debt . . .; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Id. at 496. Courts have also reviewed other factors when considering a debtor's good faith related to a motion to convert, including:

> [(i)] whether the debtor can propose a confirmable [C]hapter 13 plan;
>
> [(ii)] the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing the conversion;

9

[(iii)] the effect of the conversion on the efficient administration of the bankruptcy estate; and

[(iv)] whether conversion would further an abuse of the bankruptcy process.

Shafer, 2009 WL 1651294, at *7 (citing In re Pakuris, 262 B.R. 330, 335-36 (Bankr. E.D. Pa. 2001)). See also In re Murray, 377 B.R. 464, 468–69 (Bankr. D. Del.2007); Piccoli, 2007 WL 2822001, at *6. The Court reviews the Debtor's case in light of these factors.

### (a). The Nature of the Debt and How the Debt Arose

The first Lilley factor contemplates "whether the incurring of the debt resulted from bad acts or intentions of the debtor." In re Manfredi, 434 B.R. 356, 359 (Bankr. M.D. Pa. 2010). See also In re Myers, 491 F.3d 120, 125-26 (3d Cir. 2007) (holding that one's debt arising from an adverse judgment weighed against finding good faith). Here, the vast majority of the Debtor's debts stem from sanctions levied against her for bringing frivolous lawsuits, including those against Carter. Adv. Pro. Dkt. No. 1. Therefore, like Myers, the nature of her debts weighs against finding good faith.

### (b). The Timing of the Petition and the Debtor's Motive in Filing the Petition

A bad faith motive exists in shifting to a bankruptcy forum a dispute that could be resolved in state court. See In re Am. Telecom Corp., 304 B.R. 867, 872–75 (Bankr. N.D. Ill. 2004).

As discussed above, the Debtor's "sole purpose of this bankruptcy case" is to challenge the outcome of several pieces of litigation she brought and lost in other courts. Dkt. No. 36. In the Debtor's adversary complaint, she asserts that these disputed matters arise from the adverse state court determinations. Adv. Pro. Dkt. No. 1. Further, in her second response to the Motion, the Debtor argues that this Court should consolidate all of the non-bankruptcy litigation and re-adjudicate them in bankruptcy. Dkt. No. 69.

This Court is not the proper forum to seek review of non-bankruptcy court decisions, and to the extent the Debtor seeks a court that will grant the relief she requests, she is forum shopping. Therefore, given the Debtor's admissions, this factor weighs against finding good faith.

(c). How the Debtor's Actions Affected Creditors

To evaluate how the Debtor's actions affected creditors, "the Court must determine whether the filing is fundamentally fair to creditors in a manner that complies with the spirit of the [Bankruptcy] Code." In re Plevyak, 2025 WL 2741447, at *9 (Bankr. M.D. Pa. 2025). In Plevyak, the court held that certain actions of the debtor supported a finding of bad faith, namely: (1) the debtor filed numerous bankruptcy cases "and has continually frustrated [a creditor's] efforts to collect on its State Court Judgment[;]" (2) the creditor "has been forced to incur significant legal fees and costs in pursuing [the debtor];" and (3) "[t]he instant case was filed only after [the creditor's] State Court garnishment and not because of any meaningful intention to reorganize by the [d]ebtor." Plevyak, 2025 WL 2741447, at *9. While this is the Debtor's first bankruptcy case, this case has similarities to Plevyak: (1) her motive is to relitigate determinations in other courts that resulted in judgments held by her creditors, essentially impeding their ability to collect on those judgments; (2) Carter incurred over $119,000 in attorney's fees defending the Debtor's claims; (3) the Debtor admits she filed this case with no intent to reorganize but, instead, to relitigate determinations made by other courts. Therefore, the Debtor's actions have adversely affected creditors, including Carter, which weighs against finding good faith.

(d). The Debtor's Treatment of Creditors Before and After the Petition was Filed

"This factor looks at actions taken by [the] debtor to frustrate creditors." Manfredi, 434 B.R. at 361. "Actions meeting this factor may include the dissipation, concealment, or other transfer of assets for the purpose of placing them beyond the reach of creditors or filing multiple bankruptcy petitions for the sole purpose of frustrating a creditor's efforts to exercise its state law

remedy. Plevyak, 2025 WL 2741447, at *9 (citations omitted). The Schedules and SOFAs show that the Debtor has dissipated, transferred, concealed, or not been forthcoming about her assets. For example, her initial Schedules did not disclose her equity in the Egg Harbor Property, her rental income from the Egg Harbor Property, or her purported sale agreement for the Egg Harbor Property. Her initial Schedules also did not disclose one of her vehicles; the Timeshare; or that she owns three businesses. Her initial SOFAs did not disclose that she made transfers to family members or had losses, and even when she eventually disclosed this information, she did not provide a complete answer. Failure to disclose these assets and other information suggests that the Debtor is attempting to frustrate creditors. Further, as discussed above, the Debtor admits the sole purpose of this case is to frustrate rights of her creditors granted by other courts and that she has no intent of paying those creditors. Overall, this factor weighs decidedly against finding good faith.

(e). Whether the Debtor Has Been Forthcoming with the Court and Creditors

The final Lilley factor is "whether the Debtor has been forthcoming with the Court and creditors." Plevyak, 2025 WL 2741447, at *10. The chief purpose of bankruptcy is to enable "honest debtors to reorder their financial affairs with their creditors and obtain a 'fresh start,' free from the weight of oppressive, preexisting debt." Plevyak, 2025 WL 2741447, at *10 (citing Cohn, 54 F.3d at 1113). That is to say, "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor [to pay creditors]." In re Spitko, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (citation omitted).

Here, the Debtor has not been honest. The Debtor amended her Schedules and SOFAs several times since the Petition Date and, with each amendment, the Debtor disclosed new assets.[4] Dkt. Nos. 11, 20, 62, and unsealed Schedules and SOFAs linked to Dkt. No. 18. She has also

---

[4] After the hearing, on March 2 and 5, 2026, the Debtor filed further amended schedules. Dkt. Nos. 72, 74, 76. The Court did not consider these documents as they were submitted after the hearing on the Motion.

12

alleged an executory contract for the sale of the Egg Harbor Property that has not been disclosed in any of her Schedules.

The Debtor suggests she will continue to file amended schedules, and that she always has the right to file amended schedules. Dkt. No. 69. While it is not per se bad faith to amend schedules, repeatedly amending schedules to disclose additional assets does suggest an effort to not be fully forthcoming. See In re Blackmon, 628 B.R. 804 (Bankr. D.S.C. 2021) (finding cause to dismiss based on debtor's bad faith where debtor repeatedly failed to disclose assets until they were discovered).

Moreover, as discussed above, each amendment discloses additional assets or additional equity in assets. The Debtor's conduct suggests bad faith. Consequently, while the Debtor is correct that Bankruptcy Rule 1009(a) allows her to amend her Schedules and SOFAs at any time before the case is closed, such a right does not preclude a finding of bad faith related to the drip-by-drip disclosure of information. Therefore, this factor falls against finding good faith.

### (f). Feasibility of a Potential Plan

Another relevant factor is whether the Debtor can propose a confirmable Chapter 13 plan. The Debtor could theoretically confirm a plan if she were to sell the Egg Harbor Property. However, she has stated multiple times that she intends to pay her creditors outside of her Bankruptcy Case, which at a minimum would violate section 1325(a)(4). Therefore, the Debtor cannot confirm a plan and this factor weighs against finding good faith.

### (g). Prejudice to Creditors if the Case Were Converted

The Court also considers the impact on the Debtor of denying conversion against the prejudice to creditors caused by granting the conversion request. Shafer, 2009 WL 1651294, at *10.

The Debtor's stated purpose for filing bankruptcy, and the impetus for the filing of the Motion is to permit her to relitigate cases that she lost in other courts. Dkt. No. 36. To grant the Motion would effectively condone the Debtor's strategy, and cause defendants in those lawsuits to incur additional legal fees and waste additional time defending claims they have already prevailed. That would be unfair and prejudicial to those parties.

As a result, the benefit to the Debtor in granting this motion is minimal at best and is outweighed by the prejudice to creditors. Therefore, this factor weighs against granting the Motion.

### (g). Efficient Administration of the Estate

As noted, the Debtor's primary purpose for the Motion is to permit her to pursue the adversary proceeding. However, the Court has issued a decision together with this decision dismissing these claims. As such, continued pursuit of these claims would do nothing but waste estate assets, judicial resources, and crowd the docket. Alternatively, in Chapter 7 the Trustee can move quickly to market and sell the Egg Harbor Property, the Timeshare, and any other assets that have value. Once those assets are sold, the Trustee can review claims and make distributions. Therefore, this factor weighs against granting the Motion.

### (h). Further Abuse of the Bankruptcy Process

In Shafer, the court found bad faith because the debtor had continuously failed to disclose assets or cooperate with the trustee, and further because the debtor's motivation for conversion was to escape the control of the trustee. 2009 WL 1651294, at *10. The court also noted that the timing and motive of the debtor in seeking to convert is also relevant to this factor. See id. Similarly here, the Debtor has continuously failed to disclose assets and further has misstated or undervalued the assets that were disclosed. See Dkt. No. 20. Moreover, the purpose of the Motion is to permit the Debtor to maintain control of the adversary proceeding, and the Motion was only filed after defendants sought to dismiss due to the Debtor's lack of standing. Allowing the Debtor to

potentially continue with her scheme and continue to pursue the adversary proceeding would further the Debtor's abuse of the bankruptcy process and therefore this factor also weighs against conversion.

In addition, the Debtor has admitted that she is not seeking to make distributions to creditors or obtain a discharge. Dkt. Nos. 19, 20, 29, 36. The Debtor further stated that she is not required to "seek discharge of consumer debts" to get relief in bankruptcy court and can "[invoke] bankruptcy jurisdiction to address disputed property interests, allegations, or creditor assertions affecting estate property." Dkt. No. 69. Moreover, she stated that limiting the scope of issues to "alleged liens, secured status, and property interests" is not bad faith. Dkt. No. 69. While using these tools in a bankruptcy case are proper when the goal is to properly categorize or prioritize creditors in preparation for distributions, the Debtor's goal is to use these tools to obtain a review of non-bankruptcy court decisions and essentially use the bankruptcy case to appeal unfavorable outcomes in other courts. That is a far cry from the "honest but unfortunate debtor" who needs the help of the bankruptcy court to pay their creditors. Grogan v. Garner, 498 U.S. 287 (1991). "The Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation." In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999) (quoting Furness v. Lilienfield, 35 B.R. 1006, 1013 (D. Md. 1983)). Based on the Debtor's own admissions and for the reasons discussed above, the Debtor seeks to use bankruptcy merely as a litigation tactic. For all these reasons, this factor weighs against finding good faith.

D. The Debtor's Remaining Arguments, and Those of Satterthwaite, Are Meritless

The Debtor's remaining arguments have no merit. To the extent the Court did not address arguments related to Carter's claim above, they are not relevant to the Motion because they relate

to allowance of Carter's claim and its treatment in the case, not whether the case should be converted.

Lastly, concerning Mr. Satterthwaite's argument, that the Court should allow for conversion because it would enable him and the Debtor to relitigate issues previously determined by other courts, Dkt No. 64, this argument is of no merit for all the reasons discussed above.

### Conclusion

The Debtor's own admissions and arguments show that she has failed to satisfy her burden of proof that converting her Chapter 7 case to a case under Chapter 13 is appropriate. This is an atypical case, and the bad faith factors for conversion fall decidedly in favor of denying the Motion.

Therefore, the Motion will be denied.

Dated: March 10, 2026

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE