**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No. 25-22211 (JNP) |
| LILLIE MARIE COLEY, | Chapter 7 |
| Debtor. | Judge: Jerrold N. Poslusny, Jr. |

**OPINION DENYING DEBTOR'S MOTION FOR STAY PENDING APPEAL**

Lillie Marie Coley (the "Debtor") filed a motion (the "Stay Motion") for a stay pending appeal of this Court's Order denying the Debtor's motion seeking to convert her Chapter 7 case to Chapter 13 (the "Conversion Motion"). Because the Debtor has not demonstrated a basis for a stay pending appeal, the Stay Motion will be denied.

A. Background

On November 17, 2025 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 case. Dkt. No. 1. Shortly thereafter, the Debtor filed an adversary complaint against several lawyers, their law firms, and a title company seeking to relitigate numerous determinations by state courts that resulted in "lien(s), sanctions orders, or judgment entries" against the Debtor. Adv. No. 25-2500. Several defendants filed motions to dismiss arguing among other things, that the Debtor lacked standing. Adv. Pro. Dkt. Nos. 7, 9, 25. In response, the Debtor filed the Conversion Motion. Dkt. No. 36. In that motion, the Debtor argued that under section 706(a) of the Bankruptcy Code, she has a "one-time absolute right" to convert her Chapter 7 case to Chapter 13. Dkt. No. 36.

For the reasons more fully set forth in its opinion denying the Conversion Motion, 2026 WL 682481 (Bankr. D.N.J. Mar. 10, 2026); see Dkt. No. 80 (the "Opinion"), the Court found that the Debtor failed to satisfy her burden of proof that converting her Chapter 7 case to Chapter 13 is appropriate. Id. As discussed in the Opinion, the Debtor's conduct is atypical, and the case was not filed in good faith. See id.

On March 17, 2026, the Debtor filed a notice of appeal of the Order denying the Conversion Motion. Dkt. No. 92. On April 21, 2026, the Debtor filed the Stay Motion, seeking an injunction to prevent the sale of 9 Patriot Walk, Egg Harbor Township, New Jersey (the "Property"), while her appeal proceeds. Dkt. No. 124. The Stay Motion seeks a court order "maintaining the status quo and staying certain administration and enforcement actions affecting real property pending resolution of [the] Debtor's appeal." Id. Andrew Sklar, the Chapter 7 Trustee (the "Trustee"), filed opposition, arguing that the Debtor cannot satisfy the stay pending appeal factors, specifically the first two factors—likelihood of success on the merits and irreparable harm. Dkt. No. 130. With respect to the first factor, likelihood of success on the merits, the Trustee reasons that the Debtor's bad faith actions, as discussed in the Opinion, precluded the Debtor's ability to convert her case and, thus, the Debtor would not succeed on her appeal of the Conversion Motion's denial. Id. With respect to irreparable harm, the Trustee argues that no harm would flow to the Debtor upon the sale of the Property because it is not her residence, but rather a rental property. Id. On May 8, 2026, the Debtor filed a reply. See Dkt. No. 149. She argues, among other things, that her appeal is likely to succeed because the Court applied the wrong standard for determining conversion eligibility. Id. The Debtor also argues that as the beneficiary of a trust that owns the Property, she will suffer irreparable harm if it is sold because it is not an estate asset eligible to be sold, and it will no longer generate rental income. Id.

For the following reasons, the Court will deny the Stay Motion.

## B. Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1334, 157(a), (b). Venue is proper in this Court under 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## C. Discussion

Bankruptcy Rule 8007(a)(1)(C) directs a party seeking an order granting an injunction while an appeal is pending (i.e., a stay) to "move first in the bankruptcy court" for such relief. Further, Bankruptcy Rule 8007(a)(2) permits a party to move for injunctive relief "either before

2

or after the notice of appeal is filed." Here, the Stay Motion states that the appeal relates to the Order denying the Conversion Motion and it seeks to prevent the sale of estate assets while the appeal proceeds. Dkt. No. 124. Further, it was filed after filing the notice of appeal. Dkt. Nos. 92, 124. Therefore, the Debtor has satisfied the procedural requirements of Bankruptcy Rule 8007.

Moving to the substance of the Motion, in In re Revel AC, Inc., 802 F.3d 558 (3d Cir. 2015), the Third Circuit identified four factors to consider when evaluating a motion for a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id. at 568 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). However, the first two factors of the stay analysis "are the most critical." Nken v. Holder, 556 U.S. 418, 434 (2009). Only upon satisfying those factors should the Court consider the harm to the non-moving party and the public policy implications. See Revel, 802 F.3d at 571

### 1. Likelihood of Success

In the Third Circuit, a stay applicant's likelihood of success on the merits is satisfied upon showing "a reasonable chance, or probability, of winning." Revel, 802 F.3d at 568 (quoting Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011)). Therefore, while the Debtor must show that her chances of success are "better than negligible," she need not show that it is "more likely than not" that she would win on appeal. Revel, 802 F.3d at 569 (quoting Nken, 556 U.S. at 434, Singer Mgmt., 650 F.3d at 229).

Here, the Conversion Motion raised the issue of whether the Debtor could convert her Chapter 7 case to Chapter 13. Dkt. No. 36. The "right" to convert under section 706(a) is limited by section 706(d), which requires the Debtor be eligible to be a debtor under the chapter to which

3

she seeks to convert. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 371 (2007). In other words, a debtor may only convert her case if she has proceeded in good faith.

In the Opinion, the Court detailed numerous facts demonstrating atypical conduct by the Debtor, and that the totality of the circumstances showed that the Debtor was acting in bad faith.

For example, the Debtor failed to fully disclose information including assets and repeatedly amended her Schedules and Statement of Financial Affairs ("SOFAs") to reveal previously undisclosed assets (e.g., the status of the Property, ownership of a timeshare and three businesses, as well as gifts and losses). See Dkt. Nos. 1, 11, 18, 20. A second, independent basis for concluding that the case is atypical is that the Debtor repeatedly stated that she is not seeking a discharge, see Dkt. Nos. 11, 19, 20, 29, 36, and that the purpose of her case is for the Court to address issues related to several other pieces of litigation that have been adjudicated in other courts. See Dkt. Nos. 11, 20, 36, and the Unsealed Schedules.

Because the Court found these facts to be as egregious as the conduct by the debtors in Marrama and In re Shafer, 2009 WL 1651294 (Bankr. D.N.J. June 10, 2009), two cases in which lack of disclosure and dishonesty barred the debtors from converting their cases from Chapter 7 to Chapter 13, it concluded that conversion was not warranted. The Stay Motion does not present any argument to demonstrate a likelihood of success on the merits. The Debtor's reply, however, argues that the Court erred in denying the Conversion Motion by applying the standard for conversion eligibility set forth in Marrama (i.e., not atypical and good faith), as opposed to evaluating the best interest of the creditors. Dkt. No. 149. But as discussed above, the proper standard established in Marrama is whether the Debtor's conduct was atypical such that she was not proceeding in good faith. See Marrama, 549 U.S. at 374–75. The reply further argues that the Debtor's many amendments to her schedules did not suggest bad faith. But as discussed in the Opinion, it was not just that the Debtor filed amendments, it was that each amendment disclosed

4

additional, previously undisclosed, assets, or disclosed additional information about the Property—and there was a second, independent reason why the Court found that the Debtor's case is atypical, as discussed above.

Therefore, the Court concludes that there is <u>no</u> likelihood of success, and this factor falls decidedly in favor of denying the Stay Motion.

### 2. Irreparable Harm to the Debtor

The Debtor must "demonstrate that irreparable injury is <u>likely</u> [not merely possible] in the absence of [a stay]." <u>Revel</u>, 802 F.3d at 569 (quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008)) (emphasis and brackets in <u>Revel</u>). The Debtor "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." <u>Revel</u>, 802 F.3d at 571. (quoting <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir. 1989)). The Debtor argues that: (1) once the sale process begins, her appeal rights could be rendered meaningless; (2) sale of the Property constitutes irreparable harm because such sale cannot be adequately remedied after the fact; and (3) a forced sale would disrupt current tenants, prospective purchasers, and the existing lease-to-purchase arrangement. Dkt. No. 124.

The Debtor has failed to show an actual and imminent irreparable injury. A sale of the Property will not cause the Debtor irreparable harm because she admits that it is not an asset of the bankruptcy estate, but rather an asset owned by a trust. Dkt. No. 149. The Trustee recently filed an adversary proceeding seeking to avoid the transfer of the Property into a trust. <u>See</u> Adv. Pro. 26-1206. That adversary case almost certainly needs to be resolved before the Trustee can start a sale process. It is quite possible that the appeal will conclude prior to the adversary proceeding being resolved. Moreover, a review of the docket shows that the Trustee has not retained a realtor nor filed a sale motion. Therefore, there is no imminent threat of harm.

The Debtor argues that a sale of the Property could threaten her business. But the Property is presently owned by a trust. The trust may eventually lose the right to conduct business, but the Debtor would not. In addition, even if the transfer were avoided and the Property sold by the Trustee, the Debtor would not lose anything – she would still be a beneficiary of the Trust. While the dollar amount of distributions may change, her right to receive distributions from the trust would not. Moreover, even if the Property were sold and then the Debtor was successful on appeal, "it is quite possible [that] the District Court . . . could craft a remedy to grant the [Debtor] relief." Diocese of Camden, 2024 WL 1756015, at *5. Lastly, the Debtor's argument that there could be harm to third parties absent a stay is irrelevant to an analysis of the irreparable harm factor. See Revel, 802 F.3d at 568 (noting that irreparable injury suffered by the movant of a stay application is considered when evaluating the application's merits, not whether third parties have been irreparably harmed).

Hence, this factor also weighs conclusively in favor of denying the Stay Motion.

Because the Debtor has not met her burden related to the first two factors, the Stay Motion is denied. Although the Court need not consider the remaining factors, see Revel, 802 F.3d at 571, it does so for the sake of completeness.

*3. Injury to the Creditors*

In considering the balance of harms between the Debtor and her creditors, the Court concludes that imposing a stay pending appeal could cause harm to creditors. Imposing a stay pending appeal would prolong the adversary proceeding, and any sale process that may take place if the Trustee is successful in the adversary proceeding. Creditors would be harmed by unnecessary delay to the case.

The Debtor's reply suggests that any harm to creditors could be remedied by imposing conditions on the stay: (1) the Debtor must remain current on all secured obligations against the

6

Property; (2) the Debtor must provide the Trustee with monthly proof of mortgage and tax payments on the Property; (3) the Debtor must not enter into a new lease or transfer the Property without first providing notice to the Trustee; and (4) the Court may set a bond. See Dkt. No. 149. With respect to the first three conditions, any restrictions on the Debtor's actions are inconsequential because a trust owns the Property, not the Debtor. So, restricting the Debtor would not offer any protection to creditors. And with respect to the final condition, the Debtor has not made a showing as to what would be a reasonable bond amount, nor has she provided the Court with proof of an ability to fund a bond.

Therefore, a balancing of the harms shows that the creditors would likely suffer harm if a stay pending appeal were put in place, and this factor falls in favor of denying the Stay Motion.

### 4. Public Policy

The Debtor argues that "the public interest favors maintaining the integrity of the appellate process." Dkt. No. 124. However, in a Chapter 7 case, the public policy is for the Trustee to liquidate estate assets and make distributions to creditors as quickly as possible, actions which the Stay Motion seeks to prevent. See 11 U.S.C. § 704(a)(1) ("The trustee shall - collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."); see also In re Richman, 104 F.3d 654, 656–57 (4th Cir. 1997) ("Courts consistently have noted a public policy interest in . . . the swift and efficient administration of the bankrupt's estate."). Granting the Stay Motion where there is no basis to do so would impede the Trustee's ability to liquidate assets of the estate and works against the public policy of efficient estate administration.

Consequently, the public policy favors denying the Stay Motion.

## D. Conclusion

The Debtor has failed to show that a stay pending appeal is appropriate in this case. The Court has considered each of the applicable factors and they all fall in favor of denying the Stay Motion. Furthermore, the Court finds that there exists no immediate or imminent harm in letting the Debtor's appeal and the Trustee's complaint against the trust proceed simultaneously.

Therefore, the Stay Motion will be denied.

Dated: May 18, 2026

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE

8